OPINION OF THE COURT
Michael A. Gary, J.
Defendant is charged with unlawful possession of an electronic stun gun in violation of Administrative Code of the City of New York § 10-135 (b), a class A misdemeanor. The accusatory instrument merely alleges that defendant possessed an electronic stun gun on his person. Defendant contends the People cannot answer ready for trial in the absence of a report demonstrating the operability of the weapon. The People submit that the deponent police officer’s affirmation that the object allegedly possessed by the defendant is an *355 electronic stun gun is sufficient to convert the complaint into an information and that there is no statutory requirement that the stun gun be operable. A resolution of this novel issue requires examination of the statute’s legislative history, comparable Penal Law provisions, and relevant case law.
Administrative Code § 10-135 (a) defines an electronic stun gun as "any device designed primarily as a weapon, the purpose of which is to stun, render unconscious or paralyze a person by passing an electronic shock to such person, but shall not include an 'electronic dart gun’ as such term is defined in section 265.00 of the penal law.” No one may possess or sell an electronic stun gun within the jurisdiction of New York City (Administrative Code § 10-135 [b]), except police officers who may possess them only pursuant to guidelines established by the police department (Administrative Code § 10-135 [d]).
A review of section 10-135’s legislative history indicates that the New York City Council in 1985 was concerned about recent advertisements in local and national publications promoting the sale of electronic stun guns. The Council found that electronic stun guns "may be used by criminals to subdue and disable their victims while engaged in the commission of crimes against them” (Local Laws, 1985, No. 38 of City of New York § 1). The only salutary use of these devices was the possibility that in certain controlled circumstances, in the hands of the police, electronic stun guns could be used to subdue dangerous and disturbed persons without resort to deadly force.
Penal Law § 265.01 (1) contains a list of weapons, the possession of which by persons other than timóse in exempt categories such as police and peace officers, constitutes a violation of this subdivision and a class A misdemeanor. Included in this list is an electronic dart gun. An electronic dart gun is defined as "any device designed primarily as a weapon, the purpose of which is to momentarily stun, knock out or paralyze a person by passing an electrical shock to such person by means of a dart or projectile” (Penal Law § 265.00 [15-a]). The difference between the electronic stun gun and the electronic dart gun is in the method by which they transmit electrical current. This difference, however, is immaterial for purposes of legal analysis.
Penal Law § 265.01 (1) also proscribes the unlawful possession of a firearm. It is significant that, like a firearm, an electronic stun gun or dart gun are all incapable of inflicting *356 injury unless they are operable. Most importantly, it is no violation of the Penal Law or the Administrative Code merely to possess an inoperable firearm or electronic stun gun or dart gun. While the Penal Law definition of firearm does not mention the element of operability (Penal Law §265.00 [3]), case law is well settled that proof of operability is an essential element of the crime for a valid indictment (People v Grillo, 15 AD2d 502 [1961], affd 11 NY2d 841 [1962]) and for conversion of a complaint into an information (People v Harvin, 126 Misc 2d 775 [1984]).
This court’s research disclosed only one reported decision holding a report on operability was unnecessary where the charge was possession of a weapon which fires a projectile. In People v Adorno (128 Misc 2d 389 [1984]), a defendant was charged with possession of a dangerous or deadly instrument or weapon, a pellet gun, with intent to use unlawfully against another in violation of Penal Law § 265.01 (2). Like the complaint before me, that in Adorno contained only the arresting officer’s sworn statement that the object in question was a pellet gun. The Adorno court reasoned that a police officer’s unspecified training and experience qualified him to offer his opinion that the object seized was a pellet gun. It rejected a requirement of proof of operability, specifically a ballistics report, at the pleading stage, on the grounds that it would expand the function of an accusatory instrument into a discovery device which would provide evidence that is best left for the trial. (People v Adorno, supra, at 393-395.)
The holding in Adorno (supra), however, is not persuasive. That court never addressed the fact that, like a firearm, a pellet gun is incapable of inflicting injury unless it is operable. Moreover, that court’s reasoning that a ballistics report was evidence best left for the trial stage rested on an interpretation of the function of a misdemeanor information rejected by the Court of Appeals more than a decade later. Because there is no Grand Jury proceeding to establish the existence of a prima facie case prior to trial as with an indictment, an information must establish every element of the crime charged by nonhearsay factual allegations so the court can determine if it establishes a prima facie case. (People v Alejandro, 70 NY2d 133 [1987].)
Accordingly, where a defendant is charged with mere possession of an electronic stun gun, the complaint cannot be converted into an information without some proof as to the element of operability of the weapon. Such proof is not limited
*357 to a ballistics report. Operability may also be established by a deposition attesting to the fact that the weapon was fired and transmitted an electric current or, like any other element, may be established by circumstantial evidence. (See, e.g., People v Borrero, 26 NY2d 430 [1970.)