THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GARY NOWAK, Appellant.

Fourth Department, January 16, 1975.

*Norman P. Effman* for appellant.

*Edward C. Cosgrove, District Attorney (William E. Balthasar* of counsel), for respondents.

SIMONS, J. Appellant has been convicted of unlawful possession of a dangerous drug in the third degree (Penal Law, § 220.10) and loitering in the first degree (Penal Law, § 240.36). He seeks reversal of the judgment, claiming that evidence was improperly received against him and that the loitering statute is unconstitutional.

Appellant was arrested one evening while in the company of four others at a private apartment in Buffalo. The record does not establish whether he was a visitor of the premises or the tenant. Sheriff's officers entered the apartment under the authority of a search warrant. They testified that when they entered they found the occupants under the influence of drugs, that there was a strong smell of marijuana present, that two pipes of marijuana were on a table, one burning, that there was a substantial quantity of packaged marijuana observed in a duffel bag, stenciled "Nowak, E. T.", in an open closet and that similar packages were also found in one of the other rooms.

Upon the trial, the officers were permitted to testify over objection that when appellant was searched at the apartment he had on his person $1,700 in $5, $10, $20 and $50 bills; that the street value of 10 pounds of marijuana was about $300 a pound or $3,000 and that the wholesale value was about $1,500. A total of 19.4 pounds of marijuana was found in the apartment, and since the duffel bag contained about 10 pounds, the District Attorney contends that the evidence was proper to permit the jury to infer that all the marijuana had been appellant's and that he had either sold the marijuana found in the bedroom to his companions or, in the alternative, that he had purchased the marijuana found in the duffel bag from others in the apartment for purposes of resale at a profit and had not yet paid for it.

This evidence permitted the jury to conclude that defendant not only sold drugs in large quantities but also that he had consummated a sale on the evening in question. It was evidence which improperly tended to show a predisposition to crime and also tended to prove unlawful selling, a crime with which defendant was not charged. Receipt of the evidence under the circumstances constituted reversible error and requires a new trial (*People* v. *McKinney,* 24 N Y 2d 180, 184; *People* v. *Johnson,* 37 A D 2d 218, affd. 30 N Y 2d 776; cf. *People* v. *Goldstein,* 295 N. Y. 61).

With respect to the loitering count we dismiss the indictment, finding that the statute has no application to the facts of this case.

Loitering statutes have been around a long time. They have been regarded as worthwhile tools in preventing minor incidents of undesirable conduct and inchoate crimes in public areas. The constitutional rule applied to loitering statutes is that they must contain ascertainable standards of guilt and give citizens fair notice of contemplated conduct which is forbidden (see *People* v. *Berck,* 32 N Y 2d 567; *People* v. *Pagnotta,* 25 N Y 2d 333; *People* v. *Diaz,* 4 N Y 2d 469; see Validity of Loitering Statutes-Dangerous Drugs, Ann. 48 ALR 3d 1271, 1273; Validity of Loitering Statutes and Ordinances, Ann. 25 ALR 3d 836).

At the time of this offense, section 240.36 of the Penal Law prohibited loitering in any place by two or more persons " for the purpose of unlawfully using or possessing a dangerous drug ". The statute, clearly valid under most circumstances, cannot reasonably be construed to be applicable insofar as it attempts to make loitering in a private apartment an offense (cf. *People* v. *Robert J. L.,* 66 Misc 2d 191; *People* v. *Loehr,* 65 Misc 2d 633).

Synonyms for the word loitering come readily to mind. To loiter is to consume time idly, to linger, to delay, to spend time in a place in an idle manner, to travel indolently (see *Seattle* v. *Drew,* 70 Wn. 2d 405; *Territory of Hawaii* v. *Anduha,* 48 F. 2d 171, 173). It has been said that loitering has an accepted legal meaning which prohibits lingering on public or semipublic property (*People* v. *Bell,* 306 N. Y. 110, 113). However, while the definition of the word is clear, the concept of the offense is somewhat shapeless. Section 250.6 of the Model Penal Code of the American Law Institute defines loitering as an offense committed by one who " loiters or prowls in a place, at a time, or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons

or property in the vicinity''. That definition has apparently been found wanting in New York because the standard is subjective and fails to "point up" the actual or threatened act which is prohibited (see *People* v. *Berck,* 32 N Y 2d 567; and see *United States ex rel. Newsome* v. *Malcolm,* 492 F. 2d 1166, 1171–1174). Nevertheless, the rationale of the model code provision and the one common to all loitering statutes, is the prevention of minor offenses or incipient crime in places frequented by the public for the protection of the public (*People* v. *Pagnotta.* 25 N Y 2d 333, 338). Thus, the loitering statutes may apply to public places, semipublic buildings or areas (*People* v. *Merolla,* 9 N Y 2d 62; *People* v. *Johnson,* 6 N Y 2d 549; *People* v. *Bell,* 306 N. Y. 110) and to the common ways of private buildings (*People* v. *Pagnotta, supra*). There is also a suggestion in some of the cases that the offense includes the trespass idea of an implied invitation, which has been abused, to come upon public property (*People* v. *Bell, supra,* p. 113; and cf. *People* v. *Velazquez,* 77 Misc 2d 749, 758), something akin to a loss of legitimacy in the offender's presence because of his conduct or purpose. If this notion is an ingredient of the offense of loitering, and it is not clear that it is, the wrong becomes well-nigh impossible in one's home or when vistiting as a guest in the home of another.

But even without considering the idea of implied invitation, it is difficult to relate the concept of loitering to conduct within the privacy of an apartment. When applied to such an exclusive area the statute does not serve either of the fundamental purposes of loitering statutes by insulating members of the public from injury to their person or property or by materially assisting the police in maintaining the peace. A policeman on his rounds may well observe the type of loitering upon the street or in semipublic areas which suggests the need for further investigation or even apprehension. But conduct within the privacy of the home will rarely offend the public peace or be observable to a police officer for purposes of frustrating unlawful conduct by summary action. The application of the loitering statute to the facts at bar only invites questionable intrusions into personal privacy and makes the law an instrument of harassment. Furthermore, it would be a rare occasion indeed when a police officer would obtain a warrant solely to apprehend an offender for the crime of loitering anywhere, to say nothing of an offense in a private apartment or home. The loitering offense thus becomes little more than an excuse for warrantless intrusions or an "add-on" to multiply existing charges, as it was, here.

Obviously, persons may comport themselves unlawfully while on private property (see Penal Law, art. 220 and § 220.25, subd. 2) and penal statutes may proscribe the use of private property for criminal acts (see *People v. Schriber,* 34 A D 2d 852, affd. 29 N Y 2d 780; cf. *People v. Fiedler,* 31 N Y 2d 176; see Permitting Unlawful Use of Narcotics in Private Home as Criminal Offense, Ann. 54 ALR 3d 1297). It may be that the statutory scheme for controlling drug traffic requires supplementation to attack crimes in which it is difficult to prove constructive possession, where the drug has been consumed or discarded, or where the premises are used as a " drop " by sellers and purchasers. But the nebulous concept of the loitering statutes is hardly an appropriate means to do so when the acts occur in private living areas. Other legal resources are available.

The judgment should be reversed, a new trial granted on the charge of unlawful possession, and the indictment for loitering dismissed.

MARSH, P. J., WITMER, MAHONEY and GOLDMAN, JJ., concur.

Judgment insofar as it convicts defendant of criminal possession of a dangerous drug, 3rd degree, unanimously reversed on the law and a new trial granted; and judgment insofar as it convicts defendant of loitering, 1st degree, unanimously reversed on the law and that count of indictment dismissed.